1
2
3
4
5
6                  **IN THE UNITED STATES DISTRICT COURT**
7                     **FOR THE DISTRICT OF ARIZONA**
8

9 Jamal Shareef Bradley,              No. CV-13-01961 PHX NVW MEA

10             Petitioner,          **REPORT AND**

11 v.                         **RECOMMENDATION**

12 Charles L Ryan;  Attorney General of the
13 State of Arizona,

14             Respondents.

15 **TO THE HONORABLE NEIL V. WAKE:**

16      Petitioner, proceeding pro se, filed a petition for writ of habeas corpus pursuant to

17 28 U.S.C. § 2254 on or about September 25, 2013.  Respondents filed an Answer to

18 Petition for Writ of Habeas Corpus ("Answer") (Doc. 11 & Doc. 12) on January 6, 2014.

19 Petitioner filed a reply to the answer to his petition on May 19, 2014.  <u>See</u> Doc. 21.  The

20 matter was reassigned to the undersigned Magistrate Judge on June 30, 2014.

21      **I Procedural History**

22      A indictment returned in the Maricopa County Superior Court on July 13, 2007,

23 charged Petitioner with five counts of child abuse, two counts of sexual conduct with a

24 minor, six counts of kidnapping, one count of sexual abuse, one count of attempted child

25 molestation, and three counts of child molestation.  Answer, Exh. A.  The offenses were

26 alleged to have occurred between July 4, 2000, and September 15, 2001. <u>Id.</u>, Exh. A.

27      On August 6, 2007, Petitioner's first appointed counsel withdrew due to a conflict.

28 <u>Id.</u>, Exh. B & Exh. C. Trial was scheduled to begin on November 27, 2007.  <u>Id.</u>, Exh. D

On November 15, 2007, the trial court granted the state's motion to continue the trial date to January 8, 2008. Id., Exh. E & Exh. F. On January 7, 2008, the trial court granted the state another continuance and set trial for February 5, 2008. Id., Exh. G & Exh. H.

On January 8, 2008, the trial court granted  Petitioner's motion to change counsel. Id., Exh. J.  Approximately two weeks later, Petitioner's newly-assigned counsel moved to withdraw because his contract did not allow him to accept the appointment.  Id., Exh. K.  The trial court granted the motion to withdraw, vacated the February 5, 2008, trial date, and set trial for April 1, 2008.  Id., Exh. L & Exh. M & Exh. N.

On March 19, 2008, the state trial court indicated that Petitioner would need to be appointed new counsel because his then-current counsel, Petitioner's fourth appointed lawyer, had advised the the court he would no longer be practicing law.  Id., Exh. O.  One day later, the trial court granted the state's motion for a continuance. Id., Exh. P &, Exh. Q.

On March 27, 2008, the trial court allowed counsel to withdraw and granted the state's motion to designate the case complex. Id., Exh. S.  On May 20, 2008, trial was set for August 4, 2008. Id., Exh. T.  Less than two weeks before the trial date, however, Petitioner's new counsel filed a motion to continue. Id., Exh. U.  The court granted the motion and set trial to begin on October 1, 2008. Id., Exh. V & Exh. W.

On September 10, 2008, the state filed a motion seeking again to continue Petitioner's trial date, asserting: (1) the prosecutor had a scheduling conflict with a case that had previously been continued six times; (2) one of the state's material witnesses was on deployment in Iraq; and (3) the discovery of additional evidence. Id., Exh. X. Petitioner joined in the state's motion to continue and the court continued trial until November 5, 2008.  Id., Exh. Y & Exh. Z.

On October 16, 2008, the state moved to continue Petitioner's trial, based on another trial conflict. Id., Exh. AA.  The court granted the motion and continued trial to December 11, 2008.  Id., Exh. BB.  On December 10, 2008,  Petitioner's counsel asked to continue based on a trial scheduling conflict. Id., Exh. CC.  The court reset trial to begin

1    on January 5, 2009.  Id., Exh. DD.

2          On January 5, 2009, the date trial was to begin, the trial court permitted

3    Petitioner's counsel to withdraw, noting that "the Defendant having waived the

4    applicable time limits...".  Id., Exh. EE.   The trial court did not state why counsel's

5    withdrawal was necessary.  Id., Exh. EE. [1] The court vacated the trial date, appointed new

6    counsel to represent Petitioner, and set trial for April 6, 2009. Id., Exh. EE.  On January

7    13, 2009, the trial court ordered the parties to participate in a settlement conference

8    before March 31, 2009.  Id., Exh. FF.  When the parties moved to continue the April 6,

9    2009, trial date, the court set trial for July 16, 2009. Id., Exh. GG & Exh. HH & Exh. II.

10          On June 17, 2009, the state indicated it had a conflict with the July 16 trial date.

11    Id., Exh. JJ.  The court therefore set trial to begin on July 22, 2009. Id., Exh. LL & Exh.

12    NN.  On July 22nd, the court continued the trial for one day, and trial commenced on July

13    23, 2009, approximately two years after the date the indictment was returned.. Id., Exh.

14    OO & Exh. QQ.

15          Meanwhile, on June 29, 2009,  Petitioner, through counsel, moved to dismiss the

16    prosecution based on pre-indictment delay. Id., Exh. KK. Petitioner noted that, although

17    the primary investigation in the case occurred in 2004, there had been a previous

18    investigation in 2001. Id., Exh. KK. at 3–4.  Petitioner cited to an excerpt from the case

19    agent's police report explaining why the original 2001 investigation did not result in a

20    prosecution:

21          I have reviewed the original police report and photographs. After reviewing
          the photographs I noted that the bruising that was described on the victim[s]
22          was only minor in nature. The original report indicates that this incident
          involved discipline for ongoing problems with the children. There is no
23          reason that indicates otherwise or that the discipline was assaultive in
          nature. I had telephone contact with [the CPS caseworker who also]
24          indicated that  this incident involved discipline and also indicated that there
          is a custody dispute involving the parties that are involved in this report.
25          [The caseworker] spoke to the parents of the children and indicated that
          [CPS] would be providing services to the family,  as well as anger
26

27    _____

28          [1] A later pleading indicates counsel withdrew due to a client conflict.  See Answer, Exh
      HH.

management classes f [Petitioner]. There is little likelihood of successful criminal prosecution in this case and CPS intervention is in the best interest of the family.

Id., Exh. K at 4.

Petitioner asserted that at least two offenses charged in the indictment (Counts 2 and 4) were originally disclosed in the 2001 investigation.  Id., Exh. K at 5.  He also stated that, although the investigating officers concluded that they had probable cause for all charges no later than 2004, he was not arrested or charged until 2007.  Id., Exh. K at 5. Petitioner argued that the state criminal case should be dismissed because the delay in bringing charges "caused substantial prejudice." Id., Exh. K at 6.  He contended that he was unable to call witnesses because "he [had] no direct memory of where he was [or] whom he was with" and could "only say that the allegations are false." Id., Exh. K at 6. Petitioner also asserted that the delay was "likely" "a timely decision by the state to file old unsubstantiated charges over 6 years from the date they were originally reported to law enforcement." Id., Exh. K at 6–7.

The state responded to Petitioner's motion to dismiss arguing, *inter alia,* that the delay—though unintentional—actually prejudiced the prosecution because during the intervening period two of the state's witnesses were convicted of offenses that could be used to impeach them; another witness died; and the victims' grandparents, also witnesses to the offenses, suffered from declining health that made it difficult for them to participate in trial preparation.  Id., Exh. MM at 5.  At oral argument on the motion, the prosecutor explained that, *inter alia*, although there was probable cause to arrest Petitioner for all of the charges stated in the indictment in 2004, the police wanted to interview Petitioner before filing charges and they were unable to locate him until 2007. Id., Exh. MM at 64–65.  Petitioner argued that intentional delay was established by the fact that the two offenses that could have been charged in 2001 were not charged until additional crimes were discovered.  Id., Exh. MM at 65–66.  He also contended that the police could have acted more diligently in attempting to locate him.  Id., Exh. MM at 66. After hearing oral argument, the trial court denied  Petitioner's motion to dismiss based

on the pre-indictment delay.  Id., Exh. MM at 60–66.

The testimony adduced at trial indicated that Petitioner began dating "Michelle" in in 1992.  Petitioner and Michelle had two children together and Michelle had three other children, for a total of five children living in the household—the second oldest child was a girl, "R", born in 1990.  Id., Exh. OOOO (testimony of Michelle) at 153–55.  In 2000, Petitioner and Michelle and the five children moved into a two bedroom apartment.  Id., Exh. OOOO at 162.  Michelle testified at the trial that Petitioner was physically abusive to the children and left bruises when he struck them with a "switch" or belt.  Id., Exh. OOOO at 174–77.  See also Exh. QQQQ (this exhibit is Michelle's testimony until page 98 and then R's testimony) at 4–7, 11, 110–17, 120–28; Exh. SSSS at 114–18, 131–32, 137–44 (the testimony of the third-oldest child, a son, born to Petitioner and Michelle).  On some occasions,  Petitioner required the children to be naked when he beat them.  See Exh. QQQQ at 128 (testimony of R); Exh. SSSS at 142.

"R",  the second-oldest child in the household, testified that Petitioner sexually abused her over a period of time, including after she reported the abuse to her mother, at which time Petitioner denied the abuse.  Id., Exh. OOOO at 174–79; Exh.QQQQ at 128–30, 140–44.  Michelle testified that, on one occasion in 2001, she witnessed Petitioner having sexual intercourse with "R", who would have been ten or eleven years old at that time.  Id., Exh. OOOO at 184-85.  After witnessing this incident, Michelle testified she tried to leave the house to call the police from a pay phone, but  Petitioner would not let her leave.  Id., Exh. OOOO at 187.  Michelle testified she did not report the assault because she feared Petitioner, but that she eventually took her children to her parents' home. Id., Exh. SSSS at 126.

Michelle testified that, despite the prior abuse, she and the children resumed living with Petitioner in September 2001.  Id., Exh. QQQQ at 18.   Eventually the family became homeless and a relative reported seeing bruises on the children, and Child Protective Services ("CPS") subsequently became involved. Id., Exh. QQQQ at 20, 49.  Ultimately, Michelle's mother and father were awarded physical custody of the children. Id., Exh. PPPP at 49–50.

In 2003, while attending court-ordered counseling, Michelle told her counselor about Petitioner's sexual abuse of "R". Id., Exh. QQQQ at 24–25. The counselor, a "mandatory reporter," contacted the police. Id., Exh. SSSS at 63–64. Michelle did not want to talk to the police and did not respond to their attempts to contact her until early 2004. Id., Exh. QQQQ 25–30. After Michelle and the children were interviewed, the police—who were initially unaware of the previous 2001 investigation—attempted to locate Petitioner. Id., Exh. QQQQ at 30–31; Id., Exh. UUUU at 55–57. The police located Petitioner in July 2007. Id., Exh. UUUU at 56– 58.

On August 11, 2009, at the conclusion of the state's case, the trial court denied Petitioner's Rule 20 motion with regard to two counts. Id., Exh. UUU. Petitioner did not testify at his trial. The jury heard closing argument and jury instructions on August 12, 2009. Id., Exh. VVVV. The jury deliberated for a few hours that afternoon and for a few hours on August 13, 2009. Id., Exh. WWWW. On Tuesday, August 17, 2009, the jury returned their verdicts, acquitting Petitioner of two of the child abuse counts (Counts 2 and 5), but finding him guilty of the remaining charges (Counts 1, 3–4, 6–18). Id., Exh. RR & Exh. XXXX.

On October 16, 2009, the trial court sentenced Petitioner to two consecutive life terms of imprisonment, without the possibility of parole for 35 years, pursuant to his convictions for sexual conduct with a minor (Counts 6 & 17). Id., Exh. SS. The court imposed presumptive, consecutive terms of imprisonment on the remaining counts, totaling an additional 163 years of imprisonment. Id., Exh. SS.

Petitioner took a timely direct appeal of his convictions and sentences. Id., Exh. TT. In his direct appeal Petitioner asserted the pre-indictment delay violated his federal constitutional right to due process of law and that he was denied his Sixth Amendment right to a speedy trial. Id., Exh. UU.

The Arizona Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished memorandum decision. Id., Exh. XX. The appellate court rejected Petitioner's claim regarding the pre-indictment delay, concluding that there was no support for his contention that the delay was intentional because the record showed that

much of the evidence was not gathered until 2004, after which the police decided they wanted to locate and interview Petitioner before initiating prosecution, and there was no evidence to suggest the state delayed charges for harassment or to gain an advantage.  Id., Exh. HH at 3–5.  The appellate court also held that Petitioner had not established any prejudice arising from the delay, finding his general assertion of prejudice was "purely speculative" because he did not suggest which witnesses he was prevented from calling or what their testimony would have been, and he did not allege the existence of any "concrete evidence tending to show material harm caused by the State's delay."  Id., Exh. HH at 5–7.  The Court of Appeals also determined, reviewing the second issue for fundamental error because it was not raised at trial, that there was no speedy trial violation, noting Petitioner was responsible for nearly half of the pretrial delay and that, although he asserted his speedy trial rights eight months after the indictment, he subsequently requested four continuances.   Id., Exh. HH at 7–8.   The court also concluded Petitioner failed to show prejudice because, although he claimed the delay rendered him unable to accurately recall his "whereabouts at the time of the alleged offenses" and that he was, therefore, unable to call witnesses to support his defense, this claim was "entirely speculative" because "nothing in the record reveal[ed] what witnesses he would have called or how they would have aided in his defense."  Id., Exh. HH at 9–10.  The court concluded that, therefore, Petitioner's constitutional right to a speedy trial was not violated.  Id., Exh. HH at 10.

Petitioner sought review of this decision by the Arizona Supreme Court.  Id., Exh. YY & Exh. ZZ, which request was denied on August 8, 2011.  Id., Exh. ZZ.

Petitioner initiated a timely state action for post-conviction relief proceeding pursuant to Rule 32, Arizona Rules of Criminal Procedure.  Id., Exh. BBB.  After reviewing the record,  Petitioner's appointed counsel notified the court that he was unable to find any meritorious issue to raise on Petitioner's behalf.  Id., Exh. DDD.  The state trial court subsequently ordered counsel to provide Petitioner with the trial and appellate files, and allowed Petitioner until March 29, 2012, to file a pro per petition delineating his claims for relief.  Id., Exh. EEE.  Petitioner wrote to his counsel asking for numerous

documents and evidence, such as recordings of forensic interviews, arrest documents, audio recordings of trial proceedings, and copies of various rules, cases, and other legal authority.  Id., Exh. GGG.  On March 2, 2012,  Petitioner's counsel notified the court that he had provided Petitioner with the entire case file.  Id., Exh. FFF.  Petitioner, however, filed multiple requests for discovery and sought orders requiring counsel to provide him with legal authority. Id., Exh. HHH & Exh. III & Exh. LLL. The state trial court denied Petitioner's discovery requests in his state post-conviction action base on his failure to show good cause . Id., Exh. NNN.

Petitioner subsequently filed a pro se pleading in his Rule 32 action., in which Petitioner asserted:

1.  The grand jury heard perjured testimony and there was prosecutorial misconduct during the grand jury proceedings;

2. The indictment was insufficient due to: (a) "multiplicative charges" in Counts 6 and 15–18, resulting in a violation of Petitioner's right to be free of double jeopardy; (b) the victim's age in Count 13; and (3) late reporting of the crime alleged in Count 7;

3. There was insufficient evidence to find him guilty and he was denied his right to confront witnesses and to present evidence, including the colposcopy examination video and photographs;

4. The prosecutor committed misconduct during the grand jury proceedings by withholding the victim's physical examination report;

5. Prosecutorial misconduct during the grand jury for expelling a grand juror, denial of effective representation of counsel until after the right to challenge the grand jury proceeding had lapsed;

6. Ineffective assistance of trial, appellate, and post-conviction counsel for failing to obtain Dr. Phillip Esplin to testify as an expert witness; for not compelling the trial court to order a deposition; for failing to compel the trial court to order the colposcopy physician to testify; for failing to seek dismissal based on a speedy trial claim, for failing to force the prosecution to call Child Protective Services caseworker Cindy Miner as a witness; for failing to oppose amendments to the indictment; for failing to seek dismissal

for "multiplicative charges"; for failing to object to cruel and unusual punishment; and for failing to object to excessive punishment due to "multiplicative charges."

7. Ineffective assistance of trial counsel for failing to subpoena a police detective involved in the September 2001 child abuse investigation and for failing to investigate Petitioner's background during the time between 2004 and 2007;

8. Ineffective assistance of trial counsel for failing to object to Michelle's perjured testimony regarding moving out of the apartment;

9. Ineffective and unethical conduct of trial counsel for failing to obtain an expert witness;

10. Ineffective assistance of appellate counsel for failing to evaluate the record and present issues on appeal concerning the medical examination report regarding "R", prosecutorial misconduct, the trial court's denial of a mistrial motion, and the denial of a hearing under Arizona Rule of Evidence 404(b); and

11. Ineffective representation by post-conviction counsel for failing to raise ineffective assistance of trial counsel claims. Id., Exh. OOO.

On October 4, 2012, the state trial court found Petitioner had failed to raise any colorable claims for post-conviction relief and dismissed his Rule 32 petition.  Id., Exh. UUU.  On November 26, 2012, Petitioner filed a petition for review of the trial court's dismissal of his Rule 32 action in the Arizona Court of Appeals.  In his petitioner for review Petitioner alleged the sentences imposed on him were illegal under state law and were based on facts not found by the jury, in violation of his Sixth Amendment right to trial by jury; that the statute of limitations had expired; that he experienced pre-indictment delay and that he was denied his right to a speedy trial; and that his rights were violated by a multiplicitous indictment. Id., Exh. WWW.

The appellate court dismissed the petition for review of the trial court's decision as untimely under Arizona Rule of Criminal Procedure 32.9(c), because it was not filed within thirty days of the trial court's dismissal of the Rule 32 petition.  Id., Exh. XXX. Petitioner then filed a motion asking the trial court to permit the late filing of his petition for review. Id., Exh. YYY.  Petitioner argued that the trial court had not responded to his

earlier motion for an extension of time and that his petition was filed late due to a riot and resulting lockdown at the prison where he was housed.  Id., Exh. YYY at 1–2. On December 10, 2012, the trial court denied Petitioner's motion for an extension of time and his motion to accept the petition for review as timely filed.  Id., Exh. ZZZ.

On December 28,  2012, Petitioner filed a motion for rehearing.  Id., Exh. AAAA. He argued that the court should have accepted his untimely-filed petition for review because "[d]uring the time between the filing of the Motion to Enlarge Time for Filing and November 26, 2012 (the date Petition for Review was submitted) the Prison Complex was locked down with no movement and/or access to library in where all legal copies and research is conducted." Id., Exh. AAAA at 2.   Petitioner attached a letter from a corrections officer stating that "Rynning Unit was locked down during the week of November 19th thru November 23rd 2012. During this time there was no movement on the yard, thus preventing access to the library for the week." Id., Exh. AAAA, Attach. "B" [Arizona Department of Corrections: Inmate Letter Response].

On February 27, 2013, the state court denied  Petitioner's motion for rehearing. Id., Exh. CCCC.  Petitioner then filed a motion for reconsideration, which the court denied on April 5, 2013.  Id., Exh. DDDD & Exh. EEEE.

In his action for federal habeas relief, docketed September 25, 2013, Petitioner asserts, as reported by Respondents:

1. A violation of the Fifth Amendment's double jeopardy protections, based on an allegedly multiplicitous indictment (Claim 1(A));

2. Grand jury "procedure interference" in violation of the Fifth Amendment's Due Process Clause (Claim 1(B));

3. Insufficient evidence in violation of the Fifth Amendment's Due Process Clause (Claim 1(C));

4. A violation of the Sixth Amendment right to a speedy and public trial (Claim 2(A));

5. A violation of the Sixth Amendment right to compel witnesses to testify (Claim 2(B));

6.  A violation of the Sixth Amendment's Confrontation Clause (Claim 2(C));

7.  Ineffective assistance of trial, appellate, and post-conviction counsel, in violation of the Sixth Amendment (Claim 2(D));

8. A violation of the Sixth Amendment right to trial by jury (Claim 2(E));

9. Pre-indictment delay, in violation of the right to due process (Claim 3(A)); and

10. Fourteenth Amendment due process violation resulting from the trial court's denial of his discovery requests during the post-conviction relief proceeding and the dismissal of his petition for review from the denial of post-conviction relief as untimely (Claim 3(B)).

Respondents contend:

> This Court should dismiss the petition and deny habeas relief. First, only two of Petitioner's claims—2(A) and 3(A)—are exhausted. The remaining claims are procedurally defaulted either because the Arizona Court of Appeals explicitly applied a procedural bar to preclude merits review, or because a return to state court in an attempt to exhaust them would be futile in light of state procedural rules. Second, in addition to being procedurally defaulted, three of Petitioner claims—1(B), 1(C), and 3(B)—are not cognizable on federal habeas corpus review and could alternatively be dismissed on that basis. Finally, Petitioner's exhausted claims fail on the merits because the state court's resolution of the claims was not contrary to, nor an unreasonable application of, clearly established federal law.

**II Analysis**

**A. Exhaustion and procedural default**

The District Court may only grant federal habeas relief on the merits of a claim which has been exhausted in the state courts.  See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729–30, 111 S. Ct. 2546, 2554–55 (1991). To properly exhaust a federal habeas claim, the petitioner must afford the state the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v..Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).

The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).  See also Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007) (providing a thorough discussion of what constitutes the "highest court" in Arizona for purposes of exhausting a habeas claim in the context of a conviction resulting in a non-capital sentence).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary."  Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001).  See also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003).  In Baldwin v. Reese, the Supreme Court reiterated that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors.  See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351.

In order to fulfill exhaustion requirements, a petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court.  Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513–14 (1971); Libberton v. Ryan, 583 F.3d 1147, 1164 (9th Cir. 2009).  Full and fair presentation requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.  See Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009); Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir. 2007).  Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim to the state courts, Picard, 404 U.S. at 277–78, 92 S. Ct. at 512–13, they must do more than present the facts necessary to support the

federal claim. See Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. See Woodford v. Ngo, 548 U.S. 81, 92–93, 126 S. Ct. 2378, 2387 (2006). If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim. See, e.g., id., 548 U.S. at 92, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims. See Castille, 489 U.S. at 351–52, 109 S. Ct. at 1060. Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594–95 (1991); Coleman v. Thompson, 501 U.S. 722, 727–28, 111 S. Ct. 2546, 2553–57(1991); Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

In Arizona, claims not previously presented to the state courts in either a direct appeal or on collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive Rule 32 action is permitted. See Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) & (b) (successive petitions are limited to claims of being held in custody beyond sentence expiration, newly-discovered material facts, requests for

delayed appeal, significant change in the law retroactively applicable that would probably overturn conviction or sentence, and actual innocence); Spreitz v. Ryan, 617 F. Supp. 2d 887, 899–900 (D. Ariz. 2009) (describing Arizona's preclusion rule).

> For the procedural default rule to apply, "the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief." Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) (amended) (internal quotation marks and citations omitted). Arizona's waiver rules are independent and adequate bases for denying relief. Stewart v. Smith, 536 U.S. 856, 859–60, 122 S.Ct. 2578, 153 L.Ed.2d 762 (2002) (per curiam) (holding denials pursuant to Arizona waiver rules are independent of federal law); Ortiz v. Stewart, 149 F.3d 923, 931–32 (9th Cir. 1998) (finding Arizona waiver rule consistently and regularly applied).

Hurles v. Ryan, 752 F.3d 768, 780 (9th Cir. 2014).

To constitute an adequate and independent state procedural ground sufficient to support a state court's finding of procedural default, "a state rule must be clear, consistently applied, and well-established at the time of [the] petitioner's purported default." Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001). A state rule is considered consistently applied and well-established if the state courts follow it in the "vast majority of cases." Scott, 567 F.3d at 580, quoting Dugger v. Adams, 489 U.S. 401, 417 n.6, 109 S. Ct. 1211, 1221 n.6 (1989). Additionally, for the proffered state procedural bar to preclude the consideration of a habeas claim "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638–39 (1985). See also Harris v. Reed, 489 U.S. 255, 261–62, 109 S. Ct. 1038, 1042 (1989).

> "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038, [ ].... Sanders v. Cotton, 398 F.3d 572, 580 (7th Cir. 2005) (where the state appellate court's discussion of waiver is intertwined with its merits analysis, the state court's decision does not rest on an independent and adequate state law ground) ....

Pole v. Randolph, 570 F.3d 922, 937 (7th Cir. 2009) (some internal citations and quotations omitted). See also Scott, 567 F.3d at 581–82.

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims, which have been found to be consistently applied and well-established, bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not fairly presented to the Arizona Court of Appeals in his direct appeal or Rule 32 action. See Hurles v. Ryan, 752 F.3d 768 (9th Cir. 2014); Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931–32 (9th Cir. 1998). Because Petitioner did not properly exhaust the claims presented to the trial court in his Rule 32 action by timely seeking appeal of the trial court's decision denying relief, Petitioner did not properly exhaust these claims and they are procedurally defaulted.

## B. Cause and prejudice

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that default. "Cause" is a legitimate excuse for the petitioner's procedural default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation. See Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991). Under the "cause" prong of this test, Petitioner bears the burden of establishing that some objective factor external to the defense impeded his compliance with Arizona's procedural rules. See Moorman v. Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005); Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Martinez–Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996). To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982). See also Correll v. Stewart, 137 F.3d 1404, 1415–16 (9th Cir. 1998). Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default. See, e.g., Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986).

To establish prejudice, the petitioner must show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting his criminal proceedings with constitutional violations. See Vickers, 144 F.3d at 617; Correll, 137 F.3d at 1415–16. Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135–36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause. See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

A state criminal defendant does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993, (1987); Graves v. McEwen, 731 F.3d 876, 878 (9th Cir. 2013). Accordingly, the general rule is that errors of counsel during a state post-conviction action cannot constitute "cause" to excuse the procedural default of a federal habeas claim. See, e.g., Coleman, 501 U.S. at 752, 111 S. Ct. at 2565; Clabourne v. Ryan, 745 F.3d 362, 374 (9th Cir. 2014). However, the Supreme Court's opinion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), established a limited exception to this general rule, which exception applies only to Sixth Amendment ineffective assistance of counsel claims. Martinez held that inadequate assistance of post conviction counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. In Nguyen v. Curry, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit expanded Martinez, holding that this doctrine can also apply to excuse the procedural default of claims asserting ineffective assistance of direct appeal counsel.

In <u>Trevino v. Thaler</u>, the Supreme Court delineated the <u>Martinez</u> analysis as consisting of four prongs:

> We consequently read <u>Coleman</u> as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

133 S. Ct. 1911, 1918 (2013), <u>citing</u> <u>Martinez</u>, 132 S. Ct. at 1318–19, 1320–21 (alterations in original).

The first prong of this test requires a petitioner seeking to rely on <u>Martinez</u> to bring forward facts demonstrating that his underlying ineffective assistance of trial or appellate counsel claim is substantial. The Supreme Court has defined "substantial" as a claim that "has some merit." <u>Martinez</u>, 132 S. Ct. at 1318.  Stated inversely, a claim is "insubstantial" if "it does not have any merit or ... is wholly without factual support."  <u>Id.</u> at 1319. Determining whether an ineffective assistance of counsel claim is substantial requires the Court to examine the claim under the standard stated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). A petitioner asserting ineffective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, 466 U.S. at 687, 104 S. Ct. at 2064.  Additionally, not just any error or omission of counsel will be deemed "deficient performance" that will satisfy <u>Martinez</u>; if post-conviction counsel "in the initial-review collateral proceeding did not perform below constitutional standards," that attorney's performance does not constitute "cause." 132 S. Ct. at 1319.  Most notably, counsel "is not necessarily ineffective for failing to raise even a <u>non-frivolous</u> claim," much less a frivolous claim.  <u>Sexton v. Cozner</u>, 679 F.3d 1150, 1157 (9th Cir. 2012) (emphasis added).

### C. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice.  See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); Murray v. Carrier, 477 U.S. 478, 485–86, 106 S. Ct. 2639, 2649 (1986).  A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. See Murray, 477 U.S. at 485–86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged.  See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842–43 (9th Cir. 2001).

### D. Standard of review of exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d); Carey v. Musladin, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque, 555 F.3d 834, 838 (9th Cir. 2009).  "Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lafler v. Cooper, 132 S. Ct. 1376, 1390 (2012), quoting 28 U.S.C. § 2254(d)(1).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of United States Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result.  See, e.g., Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct.

1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Runningeagle v. Ryan, 686 F.3d 758, 785 (9th Cir. 2012), cert. denied, 133 S. Ct. 2766 (2013).

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. See McNeal v. Adams, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. See, e.g., Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010); Runningeagle, 686 F.3d at 785. An unreasonable application of law is different from an incorrect one. See Renico, 130 S. Ct. at 1862; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." Adamson v. Cathel, 633 F.3d 248, 255–56 (3d Cir. 2011). See also Howard v. Clark, 608 F.3d 563, 567–68 (9th Cir. 2010).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller–El v. Dretke, 545 U.S. 231, 240–41, 125 S. Ct. 2317, 2325 (2005); Miller–El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Runningeagle, 686 F.3d at 763 n.1; Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson, 504 F.3d at 881; Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate

court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304–05 (1982).   Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See Lafler, 132 S. Ct. 1389-90; Panetti v. Quarterman, 551 U.S. 930, 953–54, 127 S. Ct. 2842, 2858–59 (2007); Runningeagle, 686 F.3d at 785-86; Greenway v. Schriro, 653 F.3d 790, 805–06 (9th Cir. 2011).

**E. Petitioner's claims for relief**

Petitioner did not properly exhaust the claims stated in his action for state post-conviction relief in the Arizona Court of Appeals because the Arizona Court of Appeals declined review based on a state procedural rule finding Petitioner had not timely sought review of the trial court's denial of relief.  The appellate court found Petitioner's request for review barred by the state rule requiring that Petitioner bring his request for review within thirty days of the date the trial court denied relief.  Although Petitioner sought an extension of this time by the state trial court, the trial court repeatedly denied this relief.  Accordingly, some of Petitioner's federal habeas claims were not "properly exhausted" in the Arizona state courts because his attempt to fairly present the claims to the state's "highest court" was barred by application of a state procedural rule.   These claims have been procedurally defaulted.

In reply to the answer to his petition, with regard to the assertion that he procedurally defaulted his claims, Petitioner argues his post-conviction counsel erred by alleging there were no meritorious claims to raise when, Petitioner contends, Petitioner

had colorable claims to raise and, accordingly, that the cause for his procedural default was his post-conviction counsel's unconstitutional sub-standard performance. Petitioner also re-asserts the merits of his claims regarding grand jury proceedings and double jeopardy.

Petitioner has not shown cause for, nor prejudice arising from the procedural default of these claims. As explained more fully infra, Petitioner's post-conviction's counsel's performance does not constitute cause for the procedural default of his habeas claims. With regard to cause, Petitioner argued in the state court that his petition for review in his Rule 32 action was not timely because his prison unit was in lockdown, however, the prison lockdown occurred after the date Petitioner's petition for review was due. Additionally, with regard to prejudice, Petitioner has not shown that any of the defaulted claims are meritorious

As noted supra,

> To demonstrate cause and prejudice sufficient to excuse the procedural default, therefore, Martinez and Detrich require that [petitioner] make two showings. First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of Strickland. Strickland, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. See Strickland, 466 U.S. at 687, 694, 104 S.Ct. 2052. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S.Ct. at 1318.

Clabourne, 745 F.3d at 377.

Petitioner has not established that his post-conviction counsel's performance or that he was prejudiced by any alleged deficiency. There is no indication that the result of Petitioner's post-conviction proceedings would have been different had post-conviction counsel raised the claims Petitioner alleges are meritorious. There is no indication in the record that Petitioner's trial counsel's performance was deficient; notably, Petitioner's

trial counsel achieved Petitioner's acquittal on two of the charges against him.  There is also no evidence that Petitioner's post-conviction counsel's performance was deficient in not raising the claims pressed by Petitioner pro se in his Rule 32 action.  Pursuant to the Arizona Rules of Criminal Procedure, claims regarding pre-trial proceedings and most trial proceedings are waived if not brought in a direct appeal.  Additionally, there is no indication that any of Petitioner's claims regarding ineffective assistance of trial counsel would have been successful if propounded by post-conviction counsel in a Rule 32 action.  Neither has Petitioner established that any of his ineffective assistance of trial counsel claims were "substantial", pursuant to <u>Martinez</u>, i.e., that the claims have "merit."

**1. Petitioner contends his right to be free of double jeopardy was violated by a multiplicitous indictment (Claim 1(A)).**

Petitioner raised this issue in his pro se petition for review in his post-conviction action, but the Arizona Court of Appeals denied review of the merits of all of the claims stated based on Petitioner's failure to timely file the petition for review of the trial court's decision finding Petitioner had failed to state a colorable claim for relief.  Petitioner has not established cause or prejudice with regard to his failure to properly exhaust this claim, i.e., his procedural default of the claim, nor has Petitioner established "actual innocence" or that a fundamental miscarriage of justice will occur and, accordingly, the Court should not consider the merits of the claim.

To the extent Petitioner contends the failure to properly exhaust this claim is the fault of his post-conviction counsel, in <u>Martinez</u>, the Supreme Court held that "[i]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a <u>claim of ineffective assistance at trial</u>." 132 S. Ct. at 1315 (emphasis added).  Accordingly, Petitioner's post-conviction counsel's allegedly inadequate performance in failing to pursue this claim cannot constitute cause for Petitioner's procedural default of the claim.

**2. Petitioner alleges grand jury "procedure interference", in violation his right to due process of law (Claim 1(B)).**

In his pro se brief to the trial court in his Rule 32 action, Petitioner asserted, inter alia, that the grand jury heard perjured testimony and there was prosecutorial misconduct during the grand jury proceedings.  Accordingly, Petitioner at best arguably raised this issue in his petition for review by the Arizona Court of Appeals in his post-conviction action, but the Arizona Court of Appeals denied review of the matter based on Petitioner's failure to timely file the petition.  Petitioner has not established cause or prejudice with regard to his procedural default of the claim, to the extent the claim stated in the habeas petition was "properly presented" to the state court, nor a fundamental miscarriage of justice nor actual innocence and, accordingly, the Court should not consider the merits of the claim.

**3. Petitioner contends there was insufficient evidence to convict him, in violation of his right to due process of law (Claim 1(C)).**

Petitioner raised this issue in his petition for review by the Arizona Court of Appeals in his post-conviction action, but the Arizona Court of Appeals denied review of the matter based on Petitioner's failure to timely file the petition.  Petitioner has not established cause or prejudice with regard to his procedural default of the claim, nor a fundamental miscarriage of justice nor actual innocence and, accordingly, the Court should not consider the merits of the claim.

**4. Petitioner alleges he was denied his Sixth Amendment right to a speedy and public trial (Claim 2(A)).**

Petitioner raised this claim in his direct appeal, and the Arizona Court of Appeals denied the claim on the merits.  This decision was not clearly contrary to nor an unreasonable application of federal law.

The Arizona Court of Appeals that there was no speedy trial violation, noting Petitioner was responsible for nearly half of the pretrial delay and that, although he asserted his speedy trial rights eight months after the indictment, he subsequently

requested four continuances.   Answer, Exh. HH at 7–8.   The court also concluded Petitioner failed to show prejudice because, although he claimed the delay rendered him unable to accurately recall his "whereabouts at the time of the alleged offenses" and that he was, therefore, unable to call witnesses to support his defense, this claim was "entirely speculative" because "nothing in the record reveal[ed] what witnesses he would have called or how they would have aided in his defense." Id., Exh. HH at 9–10.   The court concluded that, therefore, Petitioner's constitutional right to a speedy trial was not violated.  Id., Exh. HH at 10.

The Sixth Amendment's provision of a "right to a speedy and public trial ..." applies to state court proceedings pursuant to the Fourteenth Amendment.  See Klopfer v. North Carolina, 386 U.S. 213, 222–23, 87 S. Ct. 988, 993  (1967).   The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy...trial." The speedy-trial right is "amorphous," "slippery," and "necessarily relative." Barker v. Wingo, 407 U.S. 514, 522, 92 S. Ct. 2182, 2188 (1972). In Barker, the Court refused to quantify the right or to predicate the right on a defendant's explicit request for a speedy trial.  See Vermont v. Brillon, 556 U.S. 81, 89-90, 129 S. Ct. 1283, 1290 (2009) Rejecting such "inflexible approaches," Barker established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 529, 530, 92 S. Ct. at 2191-92. Some of the factors that should be weighed when considering such claims include the length of and reasons for delay, the defendant's assertion of his right, and the prejudice to the defendant of the delay. Brillon, 556 U.S. at 89-90, 129 S. Ct. at 1290; Barker, 407 U.S. at 530, 92 S. Ct. at 2192.  To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay.  See, e.g., Barker, 407 U.S. at 530, 92 S. Ct. at 2192. Prejudice normally is presumed if the delay in bringing the defendant to trial has exceeded one year. Doggett v. United States, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992).  If this threshold is not met, the Court need not proceed with the other Barker factors. Id., 505 U.S. at 651–52, 112 S. Ct. at 2691; Barker, 407 U.S. at 530, 92 S. Ct. at 2192; United States v. Beamon, 992 F.2d

1009, 1012 (9th Cir. 1993). Deliberate delay "to hamper the defense" weighs heavily against the prosecution. <u>Barker</u>, 407 U.S. at 531, 92 S. Ct. at 2192. "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." <u>Id.</u>  Additionally, because defense counsel is defendant's agent, delay caused by the defendant's counsel is charged against the defendant.  <u>See Brillon</u>, 556 U.S. at 90-91, 129 S. Ct. at 1290-91.

Although lengthy, the delay in Petitioner's criminal proceedings was not so lengthy or prejudicial as to implicate his federal constitutional rights. The delay in Petitioner's criminal proceedings was longer than the one-year presumptively prejudicial delay, however, given the reasons for the delay, Petitioner's abandonment of his assertion of his right to a speedy trial, and the absence of evidence of prejudice,  the delay did not violate his constitutional rights and the state appellate court did not err by so holding. <u>See</u> <u>Stuard v. Stewart</u>, 401 F.3d 1064, 1068 (9th Cir. 2005); <u>Arnold v. McCarthy</u>, 566 F.2d 1377, 1385-86 (9th Cir. 1978); <u>Norris v. Schotten</u>, 146 F.3d 314, 328 (6th Cir. 1998). <u>Compare</u> <u>McNeely v. Blanas</u>, 336 F.3d 822, 829 (9th Cir. 2003).  Because the Arizona court's determination of this issue was neither contrary to nor an unreasonable application of federal law, Petitioner is not entitled to relief on this claim.

**5. Petitioner contends he was denied his Sixth Amendment right to compel witnesses to testify (Claim 2(B))**

Petitioner did not raise this claim in the state courts.  In his Rule 32 action, Petitioner asserted his counsel was ineffective for failing to compel witnesses to testify. Accordingly, having not "fairly presented" this claim to the Arizona Court of Appeals in a procedurally correct manner, Petitioner has procedurally defaulted this claim.  Because Petitioner has not established cause nor prejudice with regard to this claim nor that a fundamental miscarriage of justice will occur absent consideration of the claim, the Court should not consider the merits of the claim.

**6.  A violation of the Sixth Amendment's Confrontation Clause (Claim 2(C))**

In his pro se brief to the trial court in his Rule 32 action, Petitioner asserted, inter alia, that he was denied his right to confront witnesses.  The Arizona Court of Appeals denied review of the matter based on Petitioner's failure to timely file the petition for review of the trial court's dismissal of Petitioner's Rule 32 action for failure to state a colorable claim for.  Petitioner has not established cause or prejudice with regard to his procedural default of the claim, to the extent the claim stated in the habeas petition was "properly presented" to the state courts, nor a fundamental miscarriage of justice nor actual innocence and, accordingly, the Court should not consider the merits of the claim.

**`7. Ineffective assistance of trial, appellate, and post-conviction counsel, in violation of the Sixth Amendment (Claim 2(D))**

State criminal defendants do not have a federal constitutional right to the effective assistance of post-conviction counsel.   Petitioner raised an ineffective assistance of trial and appellate counsel claim in his pro se petition for Rule 32 relief in the state trial court, which found Petitioner had not stated a colorable claim for relief.  However, Petitioner did not properly exhaust an ineffective assistance of trial or appellate counsel claim by presenting it to the Arizona Court of Appeals in a procedurally correct manner in a timely Rule 32 action.

Petitioner asserts ineffective assistance of post-conviction counsel as cause for his procedural default of his claims of ineffective assistance of trial and appellate counsel. This allegation is one pursuant to Martinez, as explained supra.  In order to satisfy Martinez, a habeas petitioner must show (1) the underlying ineffective assistance of trial counsel claim is substantial; (2) the petitioner had ineffective counsel during the state collateral proceeding; (3) the state collateral proceeding was the initial review proceeding for the claim; and (4) state law required the petitioner to bring the claim in the initial review proceeding.  See Trevino, 133 S. Ct. at 1918; Clabourne, 745 F.3d at 375–78; Dickens v. Ryan, 740 F.3d 1302, 1319 (9th Cir. 2014); Miles v. Ryan, 713 F.3d 477, 494 (9th Cir. 2013).

In Arizona, the state collateral proceeding is the initial review proceeding for claims of ineffective assistance of trial and appellate counsel and state law required Petitioner to bring the claim in the Rule 32 proceeding.  However, Petitioner has not shown that his post-conviction counsel was ineffective; the "failure" to raise a non-meritorious claim is neither deficient performance nor prejudicial.  The Arizona trial court considered Petitioner's allegations of ineffective assistance and impliedly concluded that Petitioner's counsels' performance was not deficient or prejudicial.  Petitioner then procedurally defaulted this claim by failing to properly appeal the trial court's decision to the Arizona Court of Appeals, which declined review based on a state procedural bar.  For the same reason, i.e.,  that the Arizona trial court considered Petitioner's allegations of ineffective assistance and impliedly concluded that Petitioner's counsels' performance was not deficient or prejudicial, Petitioner has not established the second prong of the <u>Martinez</u> test, i.e.,  that the underlying ineffective assistance of trial counsel claim is "substantial."

Because Petitioner procedurally defaulted his ineffective assistance of trial and appellate counsel claims in the state courts and he has not shown cause for nor prejudice arising from the default, nor a fundamental miscarriage of justice or actual innocence, the Court should not consider the merits of the claim.

### 8. A violation of the Sixth Amendment right to trial by jury (Claim 2(E))

Petitioner raised this issue in his pro se petition for review by the Arizona Court of Appeals in his post-conviction action, but the Arizona Court of Appeals denied review of the merits of all of the claims stated based on Petitioner's failure to timely file the petition for review of the trial court's decision finding Petitioner had failed to state a colorable claim for relief.  Petitioner has not established cause or prejudice with regard to his failure to properly exhaust this claim, i.e., his procedural default of the claim, nor has Petitioner established "actual innocence" or that a fundamental miscarriage of justice will occur and, accordingly, the Court should not consider the merits of the claim.

1
2

**9. Petitioner asserts that his right to due process was violated by the pre-indictment delay (Claim 3(A))**

3
4
5
6
7
8
9
10
11
12
13
14

Petitioner properly exhausted this claim in the state courts.  The Arizona Court of Appeals rejected Petitioner's claim regarding the pre-indictment delay.   The court concluded that there was no support for any contention that the delay was intentional because the record showed that much of the evidence was not gathered until 2004, after which the police decided they wanted to locate and interview Petitioner before initiating prosecution.  The state court also determined no evidence suggested the state delayed bringing charges for harassment or to gain an advantage.  See Answer, Exh. HH at 3–5.  The appellate court also determined Petitioner had not established any prejudice arising from the delay, finding his general assertion of prejudice was "purely speculative" because he did not suggest which witnesses he was prevented from calling or what their testimony would have been, and he did not allege the existence of any "concrete evidence tending to show material harm caused by the State's delay."  Id., Exh. HH at 5–7.  .

15
16
17
18
19
20
21
22
23
24

The appellate court's decision was not clearly contrary to nor an unreasonable application of federal law.  The Supreme Court has previously acknowledged that, although statutes of limitations are the primary protection against overly stale criminal charges, the "Due Process Clause has a limited role to play in protecting against oppressive delay." United States v. Lovasco, 431 U.S. 783, 789, 97 S. Ct. 2044, 2048 (1977).  The Court has also held that a due process violation is established when the delay of the indictment violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." Id., 431 U.S. at 790, 97 S. Ct. at 2048-49 (internal citations and quotation marks omitted).

25
26
27
28

Establishing a denial of due process through pre-indictment delay requires: (1) proof of actual, non-speculative prejudice from the delay; and (2) a showing that the delay, when balanced against the reason for the delay, offends those "'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" United States v. Sherlock, 962 F.2d 1349, 1353-54 (9th Cir.1992), quoting Lovasco, 431 U.S. at

790). Generally, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Lovasco, 431 U.S. at 796, 97 S. Ct. at 2056.

Petitioner has not demonstrated actual, non-speculative prejudice resulting from the pre-indictment delay.   A petitioner must do more than assert that "witnesses' memories may have faded with the passage of time." Prantil v. California, 843 F.2d 314, 318 (9th Cir. 1988).  Accordingly, the Arizona Court of Appeals' decision denying relief on this claim in Petitioner's direct appeal was neither contrary to nor an unreasonable application of federal law and Petitioner is not entitled to relief on this claim.

**10. Petitioner alleges he was denied his right to due process because the state trial court denied his discovery requests during the post-conviction relief proceeding and because his petition for review from the denial of post-conviction relief was dismissed as untimely (Claim 3(B)).**

A defendant's complaints about asserted errors in the state post-conviction process may not be considered on federal habeas review. See, e.g., Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir.1998) (federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings"); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir.1997) (errors committed during state post-conviction proceedings are not cognizable in a federal habeas action); Villafuerte v. Stewart, 111 F.3d 616, 632 n. 7 (9th Cir.1997) (claim that petitioner "was denied due process in his state habeas corpus proceedings" was not cognizable on federal habeas review); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) ("a petition alleging errors in the state postconviction review process is not addressable through habeas corpus proceedings").

### III Conclusion

Petitioner procedurally defaulted most of his federal habeas claims by failing to present them to the Arizona Court of Appeals in a procedurally correct manner in his Rule 32 action.  Petitioner has not established cause for nor prejudice arising from his procedural default of these claims.  Neither has Petitioner established that a fundamental miscarriage of justice will occur absent consideration of the merits of the claims.

Petitioner has not established that he is "actually innocent" of the crimes of convictions such that the Court should consider the merits of the procedurally defaulted claims. With regard to the claims that were properly exhausted, the Arizona Court of Appeals' decision that Petitioner was not denied his right to a speedy trial and that his right to due process of law was not violated by the preindictment delay was not clearly contrary to nor an unreasonable application of federal law.

**IT IS THEREFORE RECOMMENDED that** Mr. Bradley's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna–Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and,

should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

Dated this 11th day of July, 2014.


_____
Mark E. Aspey
United States Magistrate Judge